UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALRADA PRECISION CORP., a California corporation, wholly owned subsidiary of DALRADA FINANCIAL CORPORATION, a Wyoming corporation,<br><br>Plaintiffs,<br><br>v.<br><br>STUART COX, an individual,<br><br>Defendant. | Case No.: 23-CV-1064 JLS (DEB)<br><br>**ORDER (1) DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; (2) DENYING PLAINTIFFS'** ***EX PARTE*** **APPLICATION FOR TEMPORARY RESTRAINING ORDER; AND (3) VACATING HEARING**<br><br>(ECF Nos. 4, 6) |

Presently before the Court are Plaintiffs Dalrada Precision Corporation ("Dalrada Precision") and Dalrada Financial Corporation's ("Dalrada Financial," and, collectively, "Plaintiffs") Motion for Temporary Restraining Order and Preliminary Injunction and Request for Expedited Hearing ("Mot.," ECF No. 4), as well as Plaintiffs' *Ex Parte* Application for Temporary Restraining Order ("*Ex Parte* Appl.," ECF No. 6). The Court afforded Defendant Stuart Cox an opportunity to respond to the Motion, but he failed to do so within the established timeframe. *See* Docket; ECF No. 5. Having reviewed the briefing and the law, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order and

Preliminary Injunction and **DENIES** Plaintiffs' *Ex Parte* Application for Temporary Restraining Order.

## BACKGROUND

Defendant was previously the sole owner of Likido Limited ("Likido"), a United Kingdom company. Complaint ("Compl.," ECF No. 1) ¶ 8. On December 6, 2019, Plaintiffs and Defendant entered into a Stock Purchase Agreement, pursuant to which Plaintiffs acquired ownership of Likido in exchange for transferring to Defendant 6,118,000 common equity shares in Dalrada Financial. *Id.* ¶¶ 10–11. Additionally, Plaintiffs provided Defendant a "Consultant Agreement," under which Plaintiffs agreed to pay Defendant a guaranteed salary of $5,000 per month over a period of thirty-six months. *Id.* ¶ 26; *id.* at 104.

Prior to entering into the Stock Purchase Agreement with Plaintiffs, Defendant had agreed to sell to MAPtech, a South Carolina company that is not a party to this action, industrial chilling systems manufactured by Likido for $429,987.98. *Id.* ¶¶ 17–18. MAPtech sent the funds to Defendant's personal bank account, but the Likido industrial chilling systems never arrived. *Id.* ¶¶ 19, 21. Plaintiffs allege that Defendant "had absolutely no ability to perform his part of the agreement [with MAPtech]" but nevertheless priced the MAPtech contract into Likido's value during his negotiations with Plaintiffs over the Stock Purchase Agreement. *Id.* ¶ 19. According to Plaintiffs' Complaint, Defendant "failed to inform Plaintiffs [prior to entering into the Stock Purchase Agreement] . . . that he had already received the payment for the order of the chillers, had pocketed the money, and was now unable to deliver on his promise to manufacture the units for MAPtech." *Id.* ¶ 21.

On June 18, 2021, MAPtech filed a Notice of Arbitration against Likido and Defendant alleging conversion, fraudulent misrepresentation, breach of contract, and unjust enrichment. *Id.* ¶ 23. On January 10, 2023, a United Kingdom arbitrator awarded MAPtech the contract price of $429,987.98 plus interest. *Id.* ¶ 25. As the new owners of

/ / /

Likido, Plaintiffs were saddled with the liability, which was later resolved through a settlement agreement between Plaintiffs and MAPtech. *Id.*

In or around May 2022, Plaintiffs and Defendant's relationship further deteriorated. *See id.* ¶¶ 27–29. Plaintiffs determined that Defendant's "continued employment with Plaintiffs must come to an end." *Id.* ¶ 30. Plaintiffs claim that, "[i]n an effort to diffuse the tension," they offered Defendant six months' paid leave and, ultimately, paid him approximately $4,000 more than they were contractually obligated to pay Defendant. *Id.* ¶¶ 30–31. According to Plaintiffs, once their payments to Defendant ceased, Defendant threated to "use the 6 million shares paid to him by [Dalrada Financial] for Likido [] to 'destroy all future PR announcements' of [Dalrada Financial]." *Id.* ¶¶ 32–33. Defendant "basically informed [Dalrada Financial] that they needed to continue making payments to him or he would ruin them," Plaintiffs allege. *Id.* ¶ 33. Finally, Plaintiffs complain that Defendant contacted Dalrada Financial employees and, "during conversations meant to slander [Dalrada Financial]," attempted to lure Plaintiffs' employees to come work for him. *Id.* ¶ 34.

Plaintiffs initiated this action on June 8, 2023. *See* Docket. Plaintiffs assert causes of action for fraud, breach of contract, unjust enrichment, defamation, and unfair competition. *See* Compl. ¶¶ 35–97. In addition to compensatory and punitive damages, Plaintiffs also seek injunctive relief "enjoining Defendant from transferring, selling, bartering, or otherwise disposing of the shares of stock held in Plaintiff [Dalrada Financial]." *Id.* at Prayer for Relief.

Plaintiffs filed the instant motion on June 15, 2023. *See* Mot. The Motion requests that the Court issue a temporary restraining order ("TRO") and preliminary injunction that "restrain[] Defendant from selling, transferring, or otherwise relinquishing his stock in Dalrada Financial Corporation pending the completion of litigation of this matter." Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("Mem.," ECF No. 4-1) at 10. The Motion / / /

also requests that the Court "enjoin Defendant from making further utterances defaming and/or slandering Plaintiffs, their subsidiaries or other business interests." *Id.*  Plaintiffs subsequently filed an *Ex Parte* Application for Temporary Restraining Order on June 26, 2023.  *See Ex Parte* Appl.  The *Ex Parte* Application also seeks a TRO "enjoining Defendant Stuart Cox from selling, transferring, encumbering, or otherwise disposing of six-million shares of Plaintiff[s'] stock." *Id.* at 1.

## LEGAL STANDARD

The standard for a TRO is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain either a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Although a plaintiff seeking a TRO or preliminary injunction must make a showing on each element, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).  Under this approach, a court may issue a TRO or preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted). Generally, a TRO or preliminary injunction is considered "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.  The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

/ / /

/ / /

When a plaintiff has not provided notice to the defendant of the plaintiff's application for a TRO, Federal Rule of Civil Procedure 65(b)(1) imposes specific requirements that must be satisfied before a TRO can issue:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "The stringent restrictions imposed . . . by Rule 65[ ] on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974) (footnote omitted). Accordingly, "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "For example, an ex parte TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Alternatively, "[i]n cases where notice could have been given to the adverse party, courts have recognized a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.3d at 322).

This District has additional requirements that parties must meet to demonstrate they are entitled to *ex parte* relief:

> A motion for an order must not be made ex parte unless it appears by affidavit or declaration (1) that within a reasonable time before the motion the party informed the opposing party or the opposing party's attorney when and where the motion would be

> made; or (2) that the party in good faith attempted to inform the opposing party and the opposing party's attorney but was unable to do so, specifying the efforts made to inform them; or (3) that for reasons specified the party should not be required to inform the opposing party or the opposing party's attorney.

S.D. Cal. Civ. R. 83.3(g)(2).

## DISCUSSION

As noted above, Plaintiffs request a TRO and a preliminary injunction prohibiting Defendant from (i) transferring his Dalrada Financial stock and (ii) defaming Plaintiffs. Plaintiffs have not made a sufficient showing to justify either request.

The Court denies Plaintiffs' request that Defendant be enjoined from transferring his Dalrada Financial stock because Plaintiffs have failed to show a likelihood of irreparable harm. To show a likelihood of irreparable harm, a plaintiff must prove more than a mere "possibility" of irreparable harm; instead, they must "demonstrate that irreparable injury is likely in the absence of an injunction." *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). "Speculative injury cannot be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) ("An injunction will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury." (internal quotation and citation omitted)). Moreover, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Here, Plaintiffs allege that Defendant has threatened to "sell or 'dump' his shares in Plaintiffs' company in order to bring about financial devastation." Mem. at 5–6. Plaintiffs' allegations are supported by text messages and emails from Defendant in which he states

his intent to "dump" his shares if Plaintiffs do not pay him, *id*. at 116, and to "use [his] 6 million shares to destroy all future PR Announcements," *id.* at 114. Plaintiffs' allegations, however, indicate that any resulting harm from Defendant's transfer of Dalrada Financial shares would be purely economic. For example, Plaintiffs request the injunction so that Defendant's "effort to cause *financial damage* to the company" may be halted. *Id.* at 6 (emphasis added). Likewise, Plaintiffs allege they would be "financially paralyz[ed]" if Defendant were to follow through on his threats. *Id.* at 7; *see also id.* at 9 ("If allowed to proceed with his dangerous efforts to achieve his self-serving, manipulative goals by bludgeoning the Plaintiffs into a course of action, the Plaintiffs would most assuredly be injured financially."); *id.* ("Defendant's actions are akin to financial blackmail."); Mot. at 1 (alleging Defendant's "actions pose the most certain peril to the Plaintiffs' current and future economic advantages"). These allegations fail to demonstrate irreparable harm, as the contemplated injury could be remedied by a damage award.

In their *Ex Parte* Application, Plaintiffs argue that "[d]riving Plaintiffs' stock prices into the ground from which Plaintiffs cannot recover any monetary compensation and which is basically non-compensable is, without question, a harm inflicted on Plaintiffs that cannot be repaired in time to save them from financial disaster." Ex Parte Appl. at 9. Plaintiffs provide no support for their claim that stock price losses are "basically non-compensable." On the contrary, "'[l]osses due to depressed stock prices' are monetary losses and 'do not constitute irreparable harm.'" *Bofi Fed. Bank v. Erhart*, No. 15-CV-02353-BAS(NLS), 2016 WL 4680291, at *8 (S.D. Cal. Sept. 7, 2016).

Moreover, Plaintiffs fail to show that Defendant's threatened transfer of shares is imminent or likely. Previous deadlines set by Defendant appear to have been empty threats, *see* Mem. at 116 (April 20, 2023, email from Defendant stating he will give Plaintiffs "72 hours to pay up or regret forever"), and Plaintiffs do not provide any intimation of when Defendant could carry out the threatened "dump," *see generally id.* Nor is it certain (1) that Defendant will actualize his threats; (2) at what price Defendant will sell his shares if he does follow through; or (3) how the resulting transfers will affect

Plaintiffs, financially or otherwise. Consequently, on the record before it, the Court finds that the threatened harm is merely speculative. *See Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) (reversing district court's grant of preliminary injunction where alleged loss of goodwill and customers was "not based on any factual allegations"); *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) ("The fact that [respondent's] reputation *might* be harmed by the marketing of [appellant's] products did not establish that irreparable harm to [respondent's] reputation is *likely*." (emphasis in original)); *Winwin Logistics, Inc. v. Su*, No. 2:15-CV-04624-CAS, 2015 WL 4163363, at *5 (C.D. Cal. July 8, 2015) (denying TRO where the harm alleged "entail[ed] at least three levels of speculation": that pending Division of Labor Standards Enforcement claims would be decided against the plaintiff; "that the sum total of these adverse decisions will approximate $4 million dollars"; and "that posting a bond of $4 million dollars to appeal these adverse decisions will drive [plaintiff] out of business").

The Court notes that "[a]lthough '[m]onetary damages are not usually sufficient to establish irreparable harm[,] . . . [t]he threat of being driven out of business is sufficient to establish irreparable harm.'" *Putian Authentic Enter. Mgmt. Co. v. Meta Platforms, Inc.*, No. 5:22-CV-01901-EJD, 2022 WL 888659, at *2 (N.D. Cal. Mar. 25, 2022) (quoting *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473–74 (9th Cir. 1985)). Here, however, while Plaintiffs allege that the "purpose and intent" of Defendant's threatened transfers is to "ruin [Plaintiffs] financially," Mem. at 6, and "bring about financial devastation," *id.* at 9, Plaintiffs have not "offer[ed] any indication about their financial strength or the likelihood that they will dissolve as going concerns at any particular point in time" as a result of Defendant's threatened transfers, *Stackla, Inc. v. Facebook Inc.*, No. 19-CV-05849-PJH, 2019 WL 4738288, at *5 (N.D. Cal. Sept. 27, 2019); *see also AboveGEM, Inc. v. Organo Gold Mgmt., Ltd.*, No. 19-CV-04789-PJH, 2019 WL 3859012, at *5 (N.D. Cal. Aug. 16, 2019) (finding no likelihood of irreparable harm where "plaintiff d[id] not offer any indication of when it would be driven out of business,

or underlying financial information that would demonstrate imminent, irreparable harm."); *Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, No. 15-CV-03839-HSG, 2015 WL 7753267, at *5 (N.D. Cal. Dec. 2, 2015) (denying preliminary injunction where "the record d[id] not contain non-conclusory evidence sufficient to establish that . . . [plaintiff's] survival is a matter of weeks or months"). Given this evidentiary lacuna, Plaintiffs' oblique references to their financial "ruin" and "devastation" are insufficient to establish irreparable harm.

In sum, Plaintiffs do not allege that any kind of harm, other than economic harm, may flow from Defendant's threatened transfer of shares, and they fail to demonstrate that such harm is imminent or likely. *See generally* Mem. Accordingly, Plaintiffs have not shown a likelihood of irreparable harm. "A failure to establish one of the *Winter* prongs is fatal" to a motion for a TRO or preliminary injunction, *see Prime Grp., Inc. v. Dixon*, No. 2:21-CV-00016-RAJ, 2021 WL 1664007, at *7 (W.D. Wash. Apr. 28, 2021) (citing *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018)); consequently, the Court **DENIES** Plaintiffs' Motion to the extent it seeks to enjoin Defendant from transferring his Dalrada Financial shares. Likewise, the Court **DENIES** Plaintiffs' *Ex Parte* Application for the same reasons.

The Court now turns to Plaintiffs' request that the Court enjoin Defendant from "making further utterances defaming and/or slandering Plaintiffs, their subsidiaries or other business interests." Mem. at 10. As to this request, Plaintiffs have made absolutely no showing on any of the elements required for the issuance of a TRO or preliminary injunction. *See generally id*. Instead, Plaintiffs simply append the request for said injunction to the "Conclusion" section of the Motion. *Id.* at 10. The requested injunction appears to be an afterthought, as every argument contained within the Motion is aimed at restricting Defendant's ability to transfer his shares in Dalrada Financial. *See generally id.* References in the Motion to Defendant's alleged defamation and slander are fleeting. As Plaintiffs have failed to make any showing on any *Winter* element as to this request, the Court **DENIES** Plaintiffs' Motion to the extent it seeks to enjoin Defendant from "defaming" or "slandering" Plaintiffs.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 4) and **DENIES** Plaintiffs' *Ex Parte* Application for Temporary Restraining Order (ECF No. 6).  The Court **VACATES** the hearing on this matter currently scheduled for July 13, 2023, at 1:30 p.m.

**IT IS SO ORDERED.**

Dated:  June 29, 2023

Hon. Janis L. Sammartino
United States District Judge